## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **MAGELLAN TRADING COMPANY, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.** |
| | ) | |
| **DEBT MANAGEMENT PARTNERS, LLC, ADAM MARCH, AND DANIEL VALENTINE,** | ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## NOTICE OF REMOVAL

Defendants Debt Management Partners, LLC, Adam March, and Daniel Valentine ("Defendants") file this Notice of Removal pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441(a) of that certain case filed in the Superior Court of DeKalb County, State of Georgia, Case No. 14CV10871-6, and in support of this Notice of Removal, state as follows:

### General Requirements

1.     This Notice of Removal is based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441(a).

2.     On November 7, 2014, Plaintiff Magellan Trading Company, LLC

1

("Plaintiff") filed an action against Defendants in the Superior Court of DeKalb County, State of Georgia, Case No. 14CV10871-6.

3.      On November 14, 2014, Defendant Debt Management Partners, LLC first received notice that Plaintiff's Summons and Complaint was received by United Corporate Services in Delaware.  Thereafter, Defendants March and Valentine first received notice of the above action through service of the Summons and Complaint on November 15, 2014.

4.      This Notice of Removal is being timely filed within one year of the commencement of the action and within thirty days of removing Defendants having received notice of the action and a copy of the summons or pleading setting forth a claim for relief.

5.      Venue is proper in the Atlanta Division of this Court because the action is being removed from the Superior Court of DeKalb County.

6.      Copies of all process, pleadings and other papers previously served on the Defendants are attached hereto as **Exhibit "A"** as required by 28 U.S.C. § 1446.

7.      Pursuant to 28 U.S.C. § 1446(d), undersigned counsel certifies that he has filed with the Clerk of the Superior Court of DeKalb County a true and correct copy of this Notice of Removal pursuant to 28 U.S.C. § 1446(d), and simultaneously served a copy of Defendants' Notice of Removal on all counsel of

record.

8.     All Defendants consent to removal of this action through undersigned

counsel.  *See Cook v. Randolph County, Ga.*, 573 F.3d 1143, 1150-51 (11th Cir.

2009).

### Diversity of Citizenship

9.     Based upon a fair reading of the complaint and the nature of the claims

asserted, the amount in controversy in this action exceeds the sum of Seventy-Five

Thousand and no/100 dollars ($75,000) exclusive of interest, costs and attorneys'

fees.  In particular, the complaint alleges that Plaintiff Magellan Trading Company,

LLC "suffered at least $292,505.00" in compensatory damages, and seeks treble

damages and punitive damages, among other relief.  Complaint ¶¶ 35; 44; 50; 63;

69.  Therefore, the requisite jurisdictional amount, as required by 28 U.S.C. §1441,

et seq., and 28 U.S.C. § 1332, has been met.

10.     Plaintiff Magellan Trading Company, LLC is a limited liability

company organized and existing under the laws of the state of Georgia with its

principal place of business in DeKalb County, Georgia.  Plaintiff Magellan Trading

Company, LLC is a citizen of Georgia for diversity jurisdiction purposes because

its principal, Chris Norman, is a citizen of Georgia.

11.     Defendant Debt Management Partners, LLC is a Delaware limited

liability company with its principal place of business in Erie County, New York. Defendants March and Valentine are individuals who reside in Erie County, New York, and are citizens of New York for diversity jurisdiction purposes. Defendant Debt Management Partners, LLC is a citizen of New York for diversity jurisdiction purposes because its principals, Defendants March and Valentine, are New York citizens. None of the Defendants was a citizen of the State of Georgia for diversity purposes at the time this action was commenced and removed.

12.     Pursuant to 28 U.S.C. § 1332 and 28 U.S.C. §1441(a) there is complete diversity of citizenship between the parties.

Wherefore, Defendants pray that this Court will make any and all orders necessary to effect the removal of this case from the Superior Court of DeKalb County, Georgia, and to effect and prepare in this Court the true record of all proceedings that may have been had in the Superior Court of DeKalb County, Georgia.

Respectfully submitted, this 10th day of December, 2014.

**ALSTON & BIRD LLP**

By:  /s/ Aaron Karl Block
                Theodore B. Eichelberger, Esq.
                Georgia Bar No. 242330
                Aaron Karl Block, Esq.

Georgia Bar No. 508192
*Attorneys for Defendants*
*Debt Management Partners, LLC,*
*Adam March, and Daniel Valentine*
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309
phone:        404-881-7000
fax:          404-881-7777
Ted.Eichelberger@alston.com
Aaron.Block@alston.com

TO:  **KNIGHT JOHNSON LLC**
Brian M. Knight, Esq.
Sherri G. Buda, Esq.
*Attorneys for Plaintiff*
1360 Peachtree Street, Suite 1201
Atlanta, Georgia 30309
phone: 404-228-4822
bknight@knightjohnson.com
sbuda@knightjohnson.com

## **CERTIFICATE OF SERVICE**

I certify that I have this day served a copy of the foregoing NOTICE OF REMOVAL upon opposing counsel through the Court's CM/ECF system and by depositing a copy of same in the U.S. Mail, postage prepaid and addressed to:

> Knight Johnson LLC
> Brian M. Knight, Esq.
> Sherri G. Buda, Esq.
> 1360 Peachtree Street, Suite 1201
> Atlanta, Georgia 30309

This 10th day of December, 2014

/s/ Aaron Karl Block_____

# EXHIBIT A

## IN THE SUPERIOR COURT OF DEKALB COUNTY
### STATE OF GEORGIA

Civil Action # _14CU10871-6_

_MAGELLAN TRADING COMPANY, LLC_

_____
Plaintiff

VS

_DEBT MANAGEMENT PARTNERS, LLC, ADAM MARCH, and DANIEL VALENTINE_
Defendant

## SUMMONS

### TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

BRYAN M. KNIGHT
1360 PEACHTREE ST. NE, SUITE 1201, ATLANTA, GA
(404) 228-4822

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, or if service by publication within 60 days of judges order of publication, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _12th_ day of _November_, 20_14_

Debra DeBerry
Clerk of Superior Court

By: _____
Deputy Clerk

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

Date Served. 11/13/14
Time Served 3:32
SL.

## General Civil Case Filing Information Form (Non-Domestic)

**Court**                    County DEKALB                Date Filed 11/07/2014
☑ Superior                                                MM-DD-YYYY
☐ State          Docket # 14CV10871-6

**Plaintiff(s)**                                          **Defendant(s)**
MAGELLAN TRADING COMPANY, LLC                             DEBT MANAGEMENT PARTERS, LLC
_____                      _____
Last    First    Middle I. Suffix Prefix    Maiden       Last    First    Middle I. Suffix Prefix    Maiden

                                                         ADAM MARCH
_____                      _____
Last    First    Middle I. Suffix Prefix    Maiden       Last    First    Middle I. Suffix Prefix    Maiden

                                                         DANIEL VALENTINE
_____                      _____
Last    First    Middle I. Suffix Prefix    Maiden       Last    First    Middle I. Suffix Prefix    Maiden

_____                      _____
Last    First    Middle I. Suffix Prefix    Maiden       Last    First    Middle I. Suffix Prefix    Maiden

**No. of Plaintiffs** 1_____                            **No. of Defendants** 3_____

**Plaintiff/Petitioner's Attorney**      ☐ Pro Se

KNIGHT, BRYAN M.
_____
Last        First        Middle I.   Suffix

**Bar #** 142401_____

---

**Check Primary Type (Check only ONE)**

☑ Contract/Account

☐ Wills/Estate

☐ Real Property

☐ Dispossessory/Distress

☐ Personal Property

☐ Equity

☐ Habeas Corpus

☐ Appeals, Reviews

☐ Post Judgment Garnishment, Attachment, or
    Other Relief

☐ Non-Domestic Contempt

☑ Tort (If tort, fill in right column)

☐ Other General Civil Specify _____

---

**If Tort is Case Type:**
    (Check no more than TWO)

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☐ Other Professional Negligence

☐ Product Liability

☑ Other Specify FRAUD
    _____

**Are Punitive Damages Pleaded?** ☑ Yes  ☐ No

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

FILED
2014 NOV -7  PM 4: 31

CLERK OF SUPERIOR COURT
DEKALB COUNTY GA

|  |  |
|---|---|
| MAGELLAN TRADING COMPANY,<br>LLC,<br><br>    Plaintiff,<br><br>v.<br><br>DEBT MANAGEMENT PARTERS, LLC,<br>ADAM MARCH, and<br>DANIEL VALENTINE,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION FILE
NO. 14CV10871-6

COPY

## COMPLAINT

COMES NOW Plaintiff Magellan Trading Company, LLC and files this Complaint against Defendants Debt Management Partners, LLC, Adam March, and Daniel Valentine, respectfully showing the Court as follows:

### PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff Magellan Trading Company, LLC is a Georgia limited liability company with its principal place of business in DeKalb County, Georgia.

2.

Defendant Debt Management Partners, LLC ("DMP") is a Delaware limited liability company that is not authorized to do business in Georgia and that does not maintain an office in Georgia.  DMP may be served with a Summons and Complaint by service upon its registered agent in Delaware, United Corporate Services, Inc., 874 Walker Road, Suite C, Dover, Delaware 19904.   This Court has personal jurisdiction over DMP pursuant to O.C.G.A. § 9-10-91(1) and O.C.G.A. § 9-10-91(3).

3.

Defendant Adam March is a resident of the State of New York.  Mr. March may be served at his business address, 200 John James Audubon Parkway, Suite 102, Amherst, New York 14068 or at his residence, 6545 Belle Way, East Amherst, New York, 14051. This Court has personal jurisdiction over Mr. March pursuant to O.C.G.A. § 9-10-91(1) and O.C.G.A. § 9-10-91(3).

4.

Defendant Daniel Valentine is a resident of the State of New York.  Mr. Valentine may be served at his business address, 200 John James Audubon Parkway, Suite 102, Amherst, New York 14068 or at his residence, 5145 Kraus Road, Clarence, New York, 10431. This Court has personal jurisdiction over Mr. Valentine pursuant to O.C.G.A. § 9-10-91(1) and O.C.G.A. § 9-10-91(3).

5.

Venue is proper pursuant to O.C.G.A. § 9-10-93.

**FACTUAL BACKGROUND**

6.

Plaintiff Magellan Trading Company, LLC ("Magellan") is an industry leading debt acquisition and selling company that specializes in providing consulting services for debt buyers and sellers as well as collection agencies.

7.

Defendant Debt Management Partners, LLC ("DMP") is engaged in the business of buying and selling non-performing receivables.   Defendants Adam March and Daniel Valentine are DMP's principals.

2

8.

Magellan and Defendants have an on-going business relationship in which Magellan purchases non-performing receivables from Defendants.

9.

On or about February 20, 2014, Magellan purchased $3,999,372.00 in outstanding debt in a transaction in which DMP acted as the broker (the "February Purchase"). March and Valentine represented to Magellan that Magellan would receive all rights and title to and all interest in the outstanding debt, including the exclusive right to collect on the accounts it purchased.

10.

Magellan paid $87,500.00 for the February Purchase, of which $50,000.18 was paid a brokerage commission to DMP.

11.

On March 6, 2014, Magellan purchased $5,000,022.00 in outstanding debt from DMP (the "March Purchase"). Magellan paid DMP 4.0% of the face value of the debt, or $200,000.88, for the March Purchase. March and Valentine represented to Magellan that Magellan would receive all rights and title to and all interest in the outstanding debt, including the exclusive right to collect on the accounts it purchased.

12.

Magellan wired DMP $200,000.88 as payment for the March Purchase.

13.

DMP provided Magellan with electronic files containing information concerning the accounts it purchased, including but not limited to, the debtor's name and social

security number, the amount owed, the issuer's name, and the account number assigned by the issuer.

14.

DMP referred to the accounts it provided to Magellan as the Evergreen Debt and indicated that the original credit was "Evergreen."

15.

Magellan re-sold $2,000.007.00 of the debt it acquired in the February Purchase and all of the March Purchase (together, the "Evergreen Debt") to Cuzco Capital Investment Management, LLC ("Cuzco") who began attempting to collect the debts.[1]

16.

On March 12, 2014, Magellan began receiving reports from Cuzco that the accounts comprising the Evergreen Debt were actually originated by Bahama Marketing Group ("BMG") and that other collection agencies had called the debtors about the same debts.  In addition, several of the debtors reported that they had never heard of Evergreen.

17.

Magellan conducted its own investigation to determine the validity of the Evergreen Debt.  As part of its investigation, Magellan asked another large national debt purchaser, National Credit Adjusters, LLC ("NCA"), to cross reference the accounts comprising the Evergreen Debt with NCA's account database.

18.

NCA matched 91.4% of the "Evergreen Debt" to accounts previously purchased by NCA.  A true and correct copy of the e-mail correspondence from NCA to Magellan

---

[1] Magellan sold the remaining $1,999,365.00 of the February Purchase to another third party, and that portion of the February Purchase is not involved in this litigation.

advising Magellan of the 91.4% match is attached hereto as **Exhibit A**.

19.

Magellan informed Cuzco of NCA's findings.   Once Magellan confirmed that the Evergreen Debt was double-sold, Cuzco ceased collection efforts on the accounts.

20.

On April 1, 2014, Chris Norman of Magellan called Valentine to inform DMP that the accounts it sold to Magellan were sold more than once and to explain the findings of Magellan's investigation.

21.

Magellan sought a refund from DMP of the amounts that Magellan paid to DMP for the February and March Purchases.  DMP failed and refused to cooperate with Magellan to reach a reasonable resolution.  As a result, Magellan was forced to retain counsel to pursue this matter.

22.

Magellan, through counsel, continued to try in good faith to resolve its dispute with DMP concerning the February and March Purchases.

23.

As part of its good-faith effort to resolve its dispute with DMP, Magellan returned all accounts that had not been collected by Cuzco.

## COUNT I
## BREACH OF CONTRACT

24.

Magellan realleges and incorporates paragraphs 1 through 23 as if set forth fully herein.

5

25.

In February 2014, Magellan and DMP entered into an oral agreement pursuant to which DMP agreed to act as broker for Magellan's purchase all rights and title to, and all interest in, $3,999,372.00 in outstanding debt.

26.

The February 2014 oral agreement between Magellan and DMP constitutes a valid and enforceable oral contract (the "Broker Contract").

27.

As a result of Magellan's payment for the February Purchase, DMP earned a $50,000.18 commission.

28.

The Broker Contract required DMP to provide Magellan all rights, title, and interest in $3,999,372.00 in outstanding debt, including the exclusive right to collect that debt.

29.

DMP breached the Broker Contract because the debt file that Magellan received pursuant to the Broker Contract misidentified critical information concerning the accounts comprising the debt, and much of the debt had already been collected or determined to be uncollectible .

30.

In March 2014, Magellan and DMP entered into an oral agreement pursuant to which DMP agreed to sell, and Magellan agreed to purchase, all rights and title to and all interest in $5,000,022.00 in outstanding debt for $200,000.88.

6

31.

The March 2014 oral agreement between Magellan and DMP constitutes a valid and enforceable oral contract (the "Sales Contract").

32.

In accordance with the terms of the Sales Contract, Magellan paid DMP $200,000.88.

33.

The Sales Contract required DMP to sell Magellan all right, title, and interest in $5,000,022.00 in outstanding debt, including the exclusive right to collect that debt.

34.

DMP breached the Sales Contract because the debt file that Magellan received pursuant to the Sales Contract misidentified critical information concerning the accounts comprising the debt, and much of the debt had already been collected or determined to be uncollectible.

35.

As a result of DMP's breaches of the Broker Contract and the Sales Contract, Magellan suffered at least **$292,505.00** in compensatory damages.

36.

DMP's breaches of the Broker Contract and the Sales Contract damaged Magellan's reputation with its customers, including Cuzco and other debt purchasers. As a result, Magellan suffered additional damages in an amount to be proven at trial.

## COUNT II
## FRAUD

### 37.

Plaintiff realleges and incorporates paragraphs 1 through 36 as if set forth fully herein.

### 38.

DMP's principals, March and Valentine, represented to Magellan that Magellan would receive all rights and title to, and all interest in, the Evergreen Debt, including the exclusive right to collect on that debt.

### 39.

At the time Defendants made the above representations, they either knew the representations were false, possessed constructive knowledge that the representations were untrue, or made reckless representations of the truthfulness of their representations without knowledge.

### 40.

Defendants' statements that Magellan would receive all rights and title to, and all interest in, the Evergreen Debt, including the exclusive right to collect on that debt, were material to Magellan's decision to purchase the Evergreen Debt.

### 41.

Defendants made the above false representations in order to induce Magellan to purchase the Evergreen Debt.

### 42.

Magellan relied on Defendants' false representations to purchase the Evergreen Debt.

8

43.

In light of their ongoing business relationship, Magellan was justified in relying on Defendants' false representations.

44.

As a result of Magellan's reliance on Defendants' false representations, Magellan suffered at least **$292,505.00** in compensatory damages.

45.

As a result of DMP's fraud, Magellan's reputation with its customers and potential customers was damaged.  As a result, Magellan suffered additional damages in an amount to be proven at trial.

## COUNT III
## NEGLIGENT MISREPRESENTATION

46.

Magellan realleges and incorporates paragraphs 1 through 45 as if set forth fully herein.

47.

Defendants falsely represented to Magellan that Magellan would receive all rights and title to, and all interest in, the Evergreen Debt, including the exclusive right to collect on that debt.

48.

Persons in Defendants' position acting with reasonable care would have known that the statements they made to Magellan were false when made.

49.

In light of Defendants' ability to know the true status of Evergreen Debt and Defendants' ongoing business relationship with Magellan, Magellan reasonably relied on Defendants' false representations.

50.

As a result of Magellan's reliance on Defendants' false representations, Magellan suffered at least **$292,505.00** in compensatory damages.

51.

As a result of DMP's misrepresentations, Magellan's reputation with its customers and potential customers was damaged.  As a result, Magellan suffered additional damages in an amount to be proven at trial.

## COUNT IV
## VIOLATION OF GEORGIA RICO ACT

52.

Magellan realleges and incorporates paragraphs 1 through 51 as if set forth fully herein.

53.

Defendants used e-mail to exchange information with Magellan concerning the February Purchase and the March Purchase.

54.

Defendants used e-mail to transfer the files containing the accounts that Magellan purchased pursuant to the February Purchase and the March Purchase.

10

55.

Defendants received payment for the March Purchase by wire transfer from Magellan.

56.

Defendants used the internet and bank wires as part of its scheme to defraud Magellan.

57.

Defendants conduct constitutes wire fraud within the meaning of 18 U.S.C. § 1343 and constitutes a racketeering activity within the meaning of 18 U.S.C. § 1961.

58.

Magellan has learned of other instances in which Defendants carried out similar fraudulent schemes. In particular, Magellan has learned that Defendants also completed multiples sales of the same debts they claimed were Evergreen accounts to URG Online and to other debt purchasers through brokers affiliated with Big Sky Research and Phoenix Asset Group.

59.

Any racketeering activity under 18 U.S.C. § 1961 is, by definition, a racketeering activity under O.C.G.A. § 16-14-3(9)(A)(xxix).

60.

Each of Defendants' multiple violations of 18 U.S.C. § 1343 were not isolated incidents but were part of a scheme to obtain payments by fraudulent means.

61.

Defendants' multiple violations of 18 U.S.C. § 1343 constitutes a "pattern of racketeering activity" within the meaning of O.C.G.A. § 16-14-3(8).

62.

Defendants acquired money as a result of its racketeering activity in violation of O.C.G.A. § 16-14-4(a).

63.

Defendants' pattern of racketeering activity caused Magellan to suffer at least **$292,505.00** in damages.  Magellan may recover such damages pursuant to O.C.G.A. § 16-14-6(a).

64.

Magellan may recover three (3) times the actual damages it sustained as a result of Defendants' racketeering activity, attorneys' fees, and costs of investigation and litigation pursuant to O.C.G.A. § 16-14-6(c).

## COUNT V - PUNITIVE DAMAGES

65.

Magellan realleges and incorporates paragraphs 1 through 64 as if set forth fully herein.

66.

Defendants' conduct as set forth above demonstrates such willful misconduct, malice, wantonness, or that entire want of care which would raise the presumption of conscious indifference to the consequences.

12

67.

Magellan is entitled to punitive damages in an amount to be determined by the enlightened conscience of the jury to punish Defendants and to deter such misconduct.

## COUNT VI - ATTORNEYS' FEES

68.

Magellan realleges and incorporates paragraphs 1 through 67 as if set forth fully herein.

69.

Defendants have acted in bad faith and been stubbornly litigious in their refusal to reasonably repay Magellan the amounts Defendants received from Magellan for the double-sold debt, thus, causing Magellan unnecessary trouble and expense, such that Magellan is entitled to recover the costs and expenses of litigation including attorneys' fees and costs in accordance with O.C.G.A. § 13-6-11.

WHEREFORE, Magellan respectfully requests that the Court:

a)      Enter judgment in favor of Magellan on all Counts in the Complaint and award compensatory damages, treble damages, punitive damages, and attorneys' fees to Magellan;

b)      Award Magellan the costs of this lawsuit; and

c)      Award Magellan such other and further relief as the Court deems just and proper.

This 7ᵗʰ day of November, 2014.

_____
Bryan M. Knight
Georgia Bar No. 142401
Sherri G. Buda
Georgia Bar No. 093399

**KNIGHT JOHNSON, LLC**
One Midtown Plaza
1360 Peachtree Street
Suite 1201
Atlanta, Georgia 30309
P: (404) 228-4822
F: (404) 228-4821
bknight@knightjohnson.com
sbuda@knightjohson.com

*Attorneys for Plaintiff*

# EXHIBIT
## "A"



Joshua Minney <josh@magellan-trading.com>

## NCA Comparison - Full Data Provided
4 messages

**Joshua Minney <josh@magellantradingcompany.com>**          Thu, Mar 27, 2014 at 2:41 PM
To: Jack Mahoney <Jack@ncaks.com>
Cc: Chris Norman <chris@magellantradingcompany.com>

Jack,

I was given instruction by Chris Norman to provide you with the files which can be found within NCA's directory on Magellan Trading Company's FTP server (username: **ncaftp**) named [BMG & Evergreen Files - For NCA Comparison.zip]. Chris indicated that Brad would have informed you of the issue and to be expecting my e-mail with the corresponding data.

These spreadsheets have been provided with full consumer and account data available (and as originally received with no Magellan alteration for formatting or any other purpose) to run against NCA-owned portfolios by SSN and/or original creditor account number to highlight any data which matches NCA's owned account. Based upon patterns from information received on our end, the original creditor's account numbers as listed are likely truncated versions of the number listed within NCA's system. It appears that, on most accounts identified as potential problems, the last three digits of the original creditor's account number may have been removed and/or altered.

If you have any questions or difficulty accessing the information as provided, please let me know.

Thank you,
--

**Joshua Minney**
**Administration**



**2107 North Decatur Road, Suite 327**
**Atlanta, GA 30033**

**josh@magellantradingcompany.com**
**Phone: (404) 445-2013 x. 507**
**Fax: (404) 975-0969**

**CONFIDENTIALITY NOTICE:** This message may contain confidential information and is intended only for the party or parties named above. If you have received this e-mail in error, send a separate e-mail notification to

the sender of the error and immediately delete this e-mail and, if applicable, all attachments received. The sender DOES NOT authorize any party except for the intended recipient(s) to copy, distribute, print, disseminate, or publish the contents or any attachments to this confidential electronic communication.

---

Joshua Minney <josh@magellantradingcompany.com>                     Fri, Mar 28, 2014 at 11:35 AM
To: Jack Mahoney <Jack@ncaks.com>
Cc: Chris Norman <chris@magellantradingcompany.com>

Jack,

I'll create a login just for you, give me a few minutes and you should have an e-mail with the credentials.

**Joshua Minney
Administration**



**Magellan        Trading
C   O   M   P   A   N   Y**

**2107 North Decatur Road, Suite 327
Atlanta, GA 30033**

**josh@magellantradingcompany.com
Phone: (404) 445-2013 x. 507
Fax: (404) 975-0969**

---

**CONFIDENTIALITY NOTICE:** This message may contain confidential information and is intended only for the party or parties named above. If you have received this e-mail in error, send a separate e-mail notification to the sender of the error and immediately delete this e-mail and, if applicable, all attachments received. The sender DOES NOT authorize any party except for the intended recipient(s) to copy, distribute, print, disseminate, or publish the contents or any attachments to this confidential electronic communication.

On 3/28/2014 11:26 AM, Jack Mahoney wrote:

I don't have the FTP information to access the file. I'm not sure who in the office does have access, but please instruct them ( or let me know who ) to pull down the file for me.

8/27/2014                    Magellan Trading CompanyMail - NCA Comparison - Full Data Provided

**From:** Joshua Minney [mailto:josh@magellantradingcompany.com]
**Sent:** Thursday, March 27, 2014 1:42 PM
**To:** Jack Mahoney
**Cc:** Chris Norman
**Subject:** NCA Comparison - Full Data Provided
**Importance:** High

[Quoted text hidden]

**DoubleCheck** identified this as **CLEAN**. Give feedback: This is SPAM • More

---

Jack Mahoney <Jack@ncaks.com>                                   Fri, Mar 28, 2014 at 3:46 PM
To: Joshua Minney <josh@magellantradingcompany.com>

Your message

    To: Jack Mahoney
    Subject: Re: NCA Comparison - Full Data Provided
    Sent: Friday, March 28, 2014 10:35:39 AM (UTC-06:00) Central Time (US & Canada)

  was read on Friday, March 28, 2014 2:45:47 PM (UTC-06:00) Central Time (US & Canada).

---

Jack Mahoney <Jack@ncaks.com>                                   Mon, Mar 31, 2014 at 10:31 AM
To: Joshua Minney <josh@magellantradingcompany.com>
Cc: Chris Norman <chris@magellantradingcompany.com>, Brad Hochstein <brad@ncaks.com>

Joshua/Chris:

I've taken your four files and combined certain fields into one file for comparison. I then took the 'IssuerAccountNumber' plus the last four of SSN and matched it against our BMG Client Account Number minus the last three digits plus the last four of the SSN as a key (to help ensure that it's the same person). **Using this process, I was able to match 91.4% of your file to a BMG account in our system.**

Seems that I am unable to place files into your FTP. Let me know when I can do that and I will place the four original files along with the Excel file 'FilesCombined-MatchUp' which has my results.

Fields in the 'FilesCombined-MatchUp' data file:

File = Your file the data was pulled from (I relabeled your files to correspond)

Key = IssuerAccountNumber + Last 4 of SSN

8/27/2014                          Magellan Trading Company Mail - NCA Comparison - Full Data Provided

Yellow highlighted fields are fields from your data files.

Green highlighted fields are the match up to the 'BMG Match' sheet provided based on the key.

*FYI – In some cases we may have multiple BMG accounts for the same consumer because they opened accounts under different BMG lenders.  The process will match to the first in the list.

Example: key number 1442956847081 for Krystle Umpierre-Succes returned our account id 5698509 in the match up, but she also has account id 5698511 showing in the 'BMG Match' data.

Any questions, let me know.



**National Credit Adjusters**

Jack Mahoney            Cell: 620-802-3311
Director of Analytics        jack@ncaks.com



---

**From:** Joshua Minney [mailto:josh@magellantradingcompany.com]
**Sent:** Thursday, March 27, 2014 1:42 PM
**To:** Jack Mahoney
**Cc:** Chris Norman
**Subject:** NCA Comparison - Full Data Provided
**Importance:** High

[Quoted text hidden]

**DoubleCheck** identified this as **CLEAN**. Give feedback: This is SPAM • More