IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| MAGELLAN TRADING COMPANY, LLC, | |
| Plaintiff, | CIVIL ACTION FILE |
| v. | NO. 1:14-CV-3928-MHC |
| DEBT MANAGEMENT PARTNERS, LLC, ADAM MARCH, and DANIEL VALENTINE, | |
| Defendants. | |

## ORDER

This case comes before the Court on the Motion to Dismiss or Transfer

Venue [Doc. 2] of Defendants Debt Management Partners, LLC, Adam March, and

Daniel Valentine (collectively, "Defendants") and Defendants' Motion to Dismiss

or Transfer Venue [Doc. 14].

## I.   BACKGROUND

Plaintiff Magellan Trading Company, LLC ("Plaintiff" or "Magellan") is a

Georgia limited liability company with its principal place of business in DeKalb

County, Georgia.  Am. Compl. [Doc. 7] ("Compl.") ¶ 1.  Chris Norman and Basel

Kawouk are Magellan's principals.  Id.  Defendant Debt Management Partners,

LLC ("DMP") is a Delaware limited liability company with its principal place of business in Erie County, New York. Id. ¶ 2. Defendants Adam March ("March") and Daniel Valentine ("Valentine") are shareholders and officers of the sole member of DMP and are also officers of DMP. March and Valentine reside in New York. Id. ¶¶ 3-4.

Magellan is a debt-acquisition and selling company, specializing in consulting services for debt buyers, debt sellers, and collection agencies. Id. ¶ 6. DMP is in the business of buying and selling non-performing accounts receivable. Id. ¶ 7. Magellan and Defendants have an ongoing business relationship in which Magellan has brokered or facilitated debt sales for DMP, and also has purchased debt from DMP. Id. ¶ 8.

On or about February 20, 2014, Magellan purchased $3,999,372.00 in outstanding debt from DMP for $87,500.00. Id. ¶ 9. During a telephone call on February 14, 2014, Valentine informed Norman that Magellan would receive all rights and title to, and all interest in, the debt, including the exclusive right to collect the debt. Id. On March 6, 2014, Magellan purchased $5,000,022.00 in outstanding debt from DMP for $200,000.88. Id. ¶ 11. On February 27, 2014, in Orlando, Florida, March and Valentine made a similar, in-person, representation to

Norman and Kawouk assuring them of Magellan's rights regarding this second purchase, including the exclusive right to collect on the debt it purchased. Id.

Magellan attached to its Complaint two Bills of Sale signed by Adam March evidencing the February purchase, and one Bill of Sale signed by Adam March evidencing the March purchase. Id. ¶¶ 10, 12, Exs. A, B.[1] Magellan received electronic files regarding the accounts it purchased from both sales, including the debtor's name and social security number, the amount owed, the issuer's name, and the account number. Id. ¶ 13. DMP referred to the accounts collectively as the "Evergreen Debt" and indicated to Magellan that the original creditor was "Evergreen." Id. ¶ 14. Magellan resold $2,000,007.00 of the debt it acquired in February and all the debt it acquired in March to Cuzco Capital Investment Management, LLC ("Cuzco"). Id. ¶ 15.[2]

On March 12, 2014, Cuzco began reporting to Magellan that the relevant accounts actually were originated by another company, Bahama Marketing Group, and that other collection agencies already had called the debtors; several of the debtors stated they had never heard of Evergreen. Id. ¶ 16. In investigating,

---

[1] The Court may consider exhibits to the Complaint in ruling on a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

[2] The remainder of the debt was sold to an additional party, and is not part of the instant litigation.

Magellan asked National Credit Adjusters, LLC ("NCA"), another large debt

purchaser, to cross-reference the accounts at issue with its database; NCA matched

91.4% of the debt at issue to accounts it had previously purchased. Id. ¶¶ 17-18.

Magellan informed Cuzco of NCA's findings; upon Magellan's

confirmation that the debt was double-sold, Cuzco ceased attempts to collect on the

accounts. Id. ¶ 19. Magellan informed DMP that the accounts had been sold more

than once, and explained its investigation results; Magellan unsuccessfully sought

a refund from DMP. Id. ¶¶ 20-21.

On November 7, 2014, Plaintiff filed a complaint against DMP, March, and

Valentine in the Superior Court of DeKalb County, Georgia, which Defendants

removed to this Court on December 10, 2014 [Doc. 1]. After Defendants moved to

dismiss and/or transfer venue [Doc. 2], Magellan filed an Amended Complaint

[Doc. 7].[3]

Magellan alleges breach of an oral contract with respect to the March 6,

2014 sale, and with respect to Magellan's February 2014 debt purchase which

---

[3] Defendants' first Motion to Dismiss or Transfer Venue [Doc. 2] addressed the
original Complaint, and contained similar (many identical) arguments to those in
its second Motion to Dismiss or Transfer Venue [Doc. 14]. The Amended
Complaint has superseded the original Complaint and is the operative Complaint in
the instant litigation. Thus, the first Motion to Dismiss or Transfer Venue [Doc. 2]
is **DENIED AS MOOT**. Nevertheless, the Court notes there is nothing in the first
Motion that would lead the Court to reach a different result.

Defendants state was from RJA Capital (although Magellan omitted RJA Capital from the allegations). Plaintiff also alleges causes of action for fraud, negligent misrepresentation, and violation of the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO") statute, based upon alleged communication between DMP and Magellan concerning Magellan's February and March 2014 debt deals. Plaintiff seeks compensatory damages in the amount of $292,505.00, plus treble damages under the Georgia RICO statute, attorneys' fees, punitive damages, and costs.

## II.   DISCUSSION

### A.   Personal Jurisdiction over Defendants

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted); see also Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 (11th Cir. 1999). "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond

Crystal, 593 F.3d at 1257-58 (citation omitted).  District courts in Georgia should take care not to conflate these two inquires because Georgia's long-arm statute does not provide jurisdiction that is coextensive with due process.  Id. at 1259.  Instead, the long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process."  Id.

If a plaintiff meets its initial burden by alleging sufficient facts to make a *prima facie* case for personal jurisdiction over a nonresident, and the defendant challenges jurisdiction and supports that challenge with affidavit evidence, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction.  Id. at 1257.  "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavit, the court must construe all reasonable inferences in favor of the plaintiff."  Id. (citation omitted).  "The court construes the allegations in the complaint as true to the extent that they are uncontroverted by defendant's evidence."  Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, Okla., 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002).

## 1.    Georgia's Long-Arm Statute

"In a diversity action, a federal court has personal jurisdiction over a non-resident defendant to the extent permitted by the forum state's long-arm statute."

Nippon Credit Bank, Ltd. v. Matthews, 291 F.3d 738, 746 (11th Cir. 2002). The Georgia long-arm statute provides that a court may exercise personal jurisdiction over any nonresident only to the extent the defendant's alleged conduct at issue satisfies one of the statutory requirements of O.C.G.A. § 9-10-91.

Relevant to the instant litigation, a Georgia court may exercise personal jurisdiction over a nonresident who "[t]ransacts any business within this state. . . ." O.C.G.A. § 9-10-91(1). The long-arm statute is to be literally construed. Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 279 Ga. 672, 675 (2005). Thus, the long-arm statute is satisfied if a nonresident transacts any business in this State, whether by phone, mail, or other "intangible" means, even if that nonresident does not physically enter the state. Id. at 675. Moreover, an individual is not shielded from personal jurisdiction in connection with contacts made in a corporate or representative capacity. See Amerireach.com, LLC v. Walker, 290 Ga. 261, 267 (2011) (rejecting the so-called "fiduciary shield doctrine" as a basis for avoiding personal jurisdiction based on contacts made in a representative capacity).

Here, Plaintiff argues that DMP and its principals worked with it on several occasions before the transactions at issue, including: (1) March requesting Magellan's help to allow DMP to establish direct selling relationships with

7

Magellan's lender contacts (in March 2013); (2) Magellan marketing a debt portfolio for DMP (in August 2013); (3) Magellan marketing a portfolio of Canadian debt for DMP (in September 2013); and (4) DMP asking Magellan to market a $38 million debt portfolio (in November 2013). See Pl.'s Resp. to Defs.' Mot. to Dismiss or Transfer Venue as to Pl.'s Am. Compl. [Doc. 15] ("Pl.'s Resp.") at 5.

According to Magellan, it was based on Valentine's representations to Norman and "the long-standing relationship between Magellan and DMP" that Magellan entered into an oral agreement with DMP for the debt purchases at issue. Id. Regarding the February purchase, as Valentine instructed, Norman wired payment to RJA Capital, then telephoned Valentine to confirm the funds were sent. Id. at 6. DMP argues it never received any fee or payment of any kind from any February transaction with Magellan, stating Magellan purchased debt in February 2014 from RJA Capital after RJA Capital purchased the debt from DMP. See Defs.' Br. in Supp. of their Mot. to Dismiss or Transfer Venue [Doc. 14-1] ("Defs.' Mot.") at 5. However, two Bills of Sale are signed by DMP regarding the February purchase.[4]

---

[4] Magellan attaches to its Complaint various Bills of Sale, including one referring to a February transaction between Magellan and DMP, signed by March.

8

Then, in late February, Norman and Kawouk met with March and Valentine in Orlando to negotiate a second purchase of Evergreen Debt. Pl.'s Resp. at 6. Upon Norman and Kawouk's return to Georgia, the parties finalized the deal by telephone and email. Id. On March 5, 2014, Valentine emailed a link to the accounts to Magellan (which Magellan received in Georgia); the next day, Magellan wired funds from its Georgia account to DMP. Id.

The Amended Complaint alleges an ongoing business relationship between Defendants and Magellan. Compl. ¶ 8. The Amended Complaint also alleges the disputes here arise out of two contracts between DMP and Magellan (a Georgia LLC). Id. ¶¶ 1, 9-13, 25-26. Magellan stresses the contact by telephone and email from Defendants to Magellan in Georgia. Pl.'s Resp. at 9-10.

Defendants argue that "[m]ere telephone or mail contact with an out-of-state defendant, or even the defendant's visits to this state, is insufficient to establish the purposeful activity with Georgia required by the 'Long Arm' statute." Defs.' Mot. at 10 (citing White v. Roberts, 216 Ga. App. 273, 274 (1995) (quotation marks and citations omitted) (rejecting personal jurisdiction under OCGA § 9-10-91(1))). They state that "the single, small transaction at issue was negotiated and agreed to

---

Defendants now state that this transaction "never happened" but that "March mistakenly signed them." Defs.' Mot. at 5, n.2.

in Florida" and the underlying debt was not that of any Georgia resident; they further argue Magellan has sold most of the outstanding debt back to a New York company. Id. Defendants maintain that only the March transaction is relevant, but stress the small amount of the February transaction if the Court were to deem it relevant. Id. They refer to the earlier alleged relationship between the parties as "[m]inor, unrelated dealings between the parties years ago" and thereby insufficient to establish jurisdiction. Id. at 11. Defendants urge the Court to rely on Gust v. Flint, 257 Ga. 129 (1987), which reversed a finding of personal jurisdiction, determining the defendants' contacts with Georgia (mailing a catalog to a Georgia address, telephone calls with the Georgia plaintiff, and receiving the payment from the Georgia plaintiff) were insufficient.

The Court agrees with Magellan that, in examining the entirety of the circumstances and the relationship between the parties, it has shown enough to establish jurisdiction under the Georgia long-arm statute. Unlike the facts in Gust, the dealings between the parties, over the course of several years, which resulted in at least one contract, and Defendants' communications with Magellan via telephone and email, together demonstrate Defendants have transacted business in Georgia. Therefore, jurisdiction is proper under Georgia's long-arm statute. See Power Guardian, LLC v. Directional Energy Corp., 904 F. Supp. 2d 1313, 1320-21

10

(M.D. Ga. 2012) (finding personal jurisdiction existed over foreign corporation

where corporation did not personally enter Georgia but entered into a contract with

the plaintiff, its representatives negotiated with plaintiff's representatives in

Florida, it emailed an invoice to plaintiff in Georgia, and it accepted revenue from

Georgia from plaintiff's payment).

### 2. Due Process

Having concluded that the record is sufficient to establish jurisdiction over

Defendants under Georgia's long-arm statute, the Court will address the

constitutional inquiry. Under the Due Process Clause of the Fourteenth

Amendment, a court may only exercise personal jurisdiction over a nonresident

defendant if it has established "certain minimum contracts with [the forum] such

that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.

408, 414 (1984) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Importantly, the defendant's contacts with the forum state must be sufficient

enough to give it fair warning that it could be haled into court there. Burger King

Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). A defendant is said to have fair

warning if it "has purposefully directed [its] activities at residents of the forum . . .

and the litigation results from alleged injuries that arise out of or relate to those

11

activities." Id. at 472-73. If the court decides the defendant purposefully established minimum contacts with the forum state, it must then consider other factors to determine if the assertion of personal jurisdiction would comport with "fair play and substantial justice." Id. at 476 (quoting Int'l Shoe Co., 326 U.S. at 320).

Defendants stress that the contacts here are "far more limited" than those at issue in Diamond Crystal, 593 F.3d at 1273-74.[5] Defs.' Mot. at 12. According to Magellan, however, Defendants purposefully contacted them in Georgia beginning in 2011, through telephone and email communications between March and Norman concerning four transactions in 2011 and 2012. Pl.'s Resp. at 11. Then, in 2013, Magellan states March "again reached into Georgia" via email and telephone regarding Magellan's efforts to market debt portfolios for DMP. Id. Similarly, Magellan states, Valentine "also purposefully directed contacts into Georgia" by telephone and email in 2013 concerning Magellan's efforts to market debt portfolios for DMP, and concerning the purchases at issue in this litigation. Id. Further, Magellan wired funds to DMP from its bank in Georgia. Id.

---

[5] Defendants also point to transfer-of-venue factors to emphasize why they believe this should be dismissed for lack of personal jurisdiction. Defs.' Mot. at 12. These factors are relevant for the issue of venue transfer, but are not to be considered for the purpose of personal jurisdiction.

12

Magellan states that DMP's contacts and March's communications with Norman in Georgia led to an ongoing business relationship, including various telephone and email contacts in Georgia, which resulted in the transactions at issue. Id. at 12. Similarly, it argues that Valentine's communications with it in Georgia "were critical to the completion of the two transactions at issue." Id. Finally, Magellan asserts that personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice because a Georgia plaintiff who is injured by a nonresident should not have to travel to a foreign state to bring an action, Georgia has a substantial interest in providing relief to its citizens (and its courts are capable of resolving this dispute), and a different forum would not further any fundamental social policy. Id. at 13.

The Court here finds that the entirety of the circumstances demonstrate that jurisdiction over Defendants is proper and does not violate due process. Defendants' purposeful dealings with Magellan are sufficient to give Defendants fair warning that they could be haled into this Court. See Burger King, 471 U.S. at 476; see also Power Guardian, 904 F. Supp. 2d at 1322-24. Thus, to the extent it is based on lack of personal jurisdiction, Defendants' Motion to Dismiss is **DENIED**.

## B.     Rule 19 Necessary Party

Defendants argue that RJA Capital is an indispensable party in this case and, therefore, must be joined. Defs.' Mot. at 13-17.  Defendants argue that, if RJA Capital is not a party to this suit, it risks an indemnity or contribution suit (if Plaintiff prevails here) or a separate suit against if by Plaintiff (if Defendants prevail).  Id.  Defendants further argue that RJA Capital cannot properly be joined here because the Court has no personal jurisdiction over it.  Id. at 14-15.

Federal Rule of Civil Procedure 19 "states a two-part test for determining whether a party is indispensable."  Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc., 669 F.2d 667, 669 (11th Cir. 1982) (holding that it was not necessary to join an absent party against whom the defendant might wish to seek indemnification).  The first part of the test requires the court to determine whether: (1) complete relief can be afforded without the absent party, or (2) the nonparty's absence will impede its ability to protect some interest in the subject matter of the litigation or subject the parties to multiple or inconsistent obligations.  FED. R. CIV. P. 19(a).  Every party whose conduct is at issue in litigation is not a required party. Challenge Homes, 669 F.2d at 669.  Even where facts concerning a nonparty's conduct are litigated, it is not required unless it is legally bound by the outcome of the litigation.  Id.  If a nonparty is required, it must be joined if feasible.  Id.  "The

14

complete relief provision of 19(a) does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible." U.S. v. Janke, No. 09-14044-CIV, 2009 WL 2525073, at *2 (S.D. Fla. Aug. 17, 2009) (citation and internal punctuation omitted).

Under Rule 19(a), the court must first determine "whether the person in question is one who should be joined if feasible." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1280 (11th Cir. 2003) (quoting Challenge Homes, 669 F.2d at 669). Under Rule 19(b), for all such necessary parties, the court then analyzes whether the litigation can continue if the party cannot be joined. Id.

Because Magellan seeks only monetary damages, the Court can afford complete relief without RJA Capital's presence. Further, RJA Capital's absence will not impede its ability to protect its interests, and will not subject Defendants to multiple or inconsistent obligations. Subsequent potential indemnity actions are not to be considered for purposes of determining whether a party is indispensable. Janke, 2009 WL 2525073, at *2. Thus, the Court finds RJA Capital is not a necessary party pursuant to Rule 19. To the extent it is based on failure to join a necessary party, Defendants' Motion to Dismiss is **DENIED**.

## C.   Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all the well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, they must be

16

construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). But the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

### 1.    Breach of Contract (Count I)

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130 (11th Cir. 2014) (quoting Norton v. Budget Rent A Car Sys., Inc., 307 Ga. App. 501 (2010)). The Amended Complaint contains allegations that, in February, 2014, Magellan and DMP entered into an oral agreement whereby Magellan would purchase from DMP outstanding debt in the value of $3,999,372.00 for the price of $87,500. Compl. ¶ 25. It further alleges that the parties' February 2014 agreement required DMP to provide Magellan all rights, title, and interest in this outstanding debt, including the exclusive right to collect upon such debt. Id. ¶ 27. It alleges that, in March, 2014, Magellan and DMP entered into another oral agreement in which Magellan agreed to purchase from DMP outstanding debt in the value of

17

$5,000,022.00 for the price of $200,000.88, and that DMP would provide all rights, title, and interest in such debt, including the exclusive right to collect upon it. Id. ¶¶ 29, 31. The Amended Complaint further alleges that DMP breached these two oral contracts by failing to provide Magellan with all rights and title to and interest in the debt it purchased, including the exclusive right to collect upon the debt. Id. ¶¶ 20, 28, 32. Thus, the Amended Complaint states the specific agreements to sell specific products for a particular price and states the term allegedly breached.

Defendants argue that Magellan's reference to "some amorphous right and title to collect the debt" "is merely a legal characterization and therefore insufficient." Defs.' Mot. at 18. Defendants further argue that "Magellan was simply dissatisfied with the quality of the non-performing debt it acquired." Id. at 19-20. They take issue with Magellan's argument that National Credit Adjusters, LLC, matched the debt at issue here, stating the relevant document (purportedly identifying a match of accounts) showed only a match of individuals. Id. at 21-22. However, the document clearly states it identified the accounts with the greatest possible specificity; additional information (such as the full account numbers) may be sought through discovery. This is not a proper basis for dismissal. Defendants argue that Magellan never alleged that Defendants represented the debt had not been sold before. Id. at 22. However, the Court finds that Magellan's allegation

18

regarding Defendants' warranty that Magellan would receive all rights and title to, and all interest in, the debt it purchased is sufficiently inconsistent with previously-sold debt to withstand a motion to dismiss. Thus, the Court finds Magellan has adequately stated a claim for breach of contract.

### 2. Fraud and Negligent Misrepresentation (Counts II and III)

In averments of fraud or mistake, "the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). Federal courts have interpreted Rule 9(b) to require a plaintiff to allege "facts as to time, place, and substance of the defendant's alleged fraud." U.S. ex rel. Clusen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1308 (11th Cir. 2002) (citation omitted). "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." FED. R. CIV. P. 9(b).

Here, the Amended Complaint alleges that (1) during a telephone call on February 14, 2014, Valentine informed Norman that Magellan would receive all rights and title to, and all interest in, the debt purchased in February, including the exclusive right to collect upon such debt; (2) on February 27, 2014, DMP and Magellan met in person at a conference in Orlando, Florida, where Valentine and March informed Norman and Kawouk that Magellan would receive all rights and title to, and all interest in, the debt purchased in March, including the exclusive

right to collect upon such debt; and (3) those statements were false.  Compl. ¶¶ 36-38.  It further alleges that Defendants knew or should have known their statements were false when made, but made the statements to induce Magellan to make the purchases at issue.  Id. ¶¶ 39, 41.  The Amended Complaint also alleges that someone acting with reasonable care in Defendants' position would have known these statements to be false.  Id. ¶ 48.

Defendants argue the language in the bills of sale stating they did not warrant collectability should lead the Court to conclude Magellan could not reasonably have relied on the statement that they would have the sole right to collect the debt involved in the relevant purchases.  However, Magellan argues that "collectability of a debt refers to whether the debtor pays the debt, not whether DMP has granted multiple companies the right to collect the debt," and the bills of sale are irrelevant for this purpose.  Pl.'s Resp. at 19-20.  The Court agrees with Magellan, and finds Magellan's allegations sufficiently state claims for fraud and negligent misrepresentation to withstand a motion to dismiss.

### 3.    Georgia RICO (Count IV)

The Georgia RICO Act makes it unlawful for any person to acquire an interest in any property, including money, through a pattern of racketeering activity.  O.C.G.A. § 16-14-4(a).  In this regard, a "pattern of racketeering activity"

includes at least two acts in furtherance of any racketeering activity identified under 18 U.S.C. § 1961, which activities include mail and wire fraud. O.C.G.A. § 16-14-3(9)(A)(xxix), 18 U.S.C. § 1961, 18 U.S.C. § 1343.

Defendants argue that Plaintiff's "Georgia RICO claim has only a single purportedly substantive paragraph regarding the necessary predicate act allegations." Defs.' Mot. at 26. This paragraph, they argue, "contains no details regarding those allegedly fraudulent predicate acts, the laws allegedly violated, and the requisite jurisdictional nexus." Id.

However, the Amended Complaint contains allegations that Defendants defrauded Magellan in connection with the purchases at issue. Compl. ¶¶ 36-45. It alleges that Defendants used email and bank wires in connection with their fraudulent activity, and that the fraudulent activity included at least two instances of fraud against Magellan, along with similar fraudulent activity against other parties. Id. ¶¶ 53-61. Further, it alleges Defendants acquired money as a result of their fraudulent activity. Id. ¶ 62. Thus, the Court finds Magellan has adequately pleaded the elements of a RICO claim and, as such, the claim withstands a motion to dismiss.

21

### 4.   Punitive Damages and Attorneys' Fees (Counts V and VI)

Georgia law provides for punitive damages in connection with tort claims to penalize, punish, or deter a defendant who has acted with "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1. Georgia law provides for an award of attorney's fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11.

Defendants argue the count regarding punitive damages "summarily adopts the preceding paragraphs" and this practice is condemned in the Eleventh Circuit. Defs.' Mot. at 27 (citing Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1125-26 (11th Cir. 2014)). The case relied upon by Defendants, however, deals with a shotgun pleading, which even Defendants do not argue is present here.

Defendants also argue the Amended Complaint contains "only unadorned legal assertions" that punitive damages are proper. Id. It states Magellan's claims do not support punitive damages, and that "Magellan effectively concedes that it cannot plead such wantonness in good faith, explaining that it resorted to pleading DMP's mental state 'generally.'" Id. at 27-28.

Regarding attorneys' fees resulting from stubborn litigiousness, Defendants argue Magellan's claim only contains "a vague adoption paragraph and a bare legal conclusion." Id. at 28. They argue there are bona fide disputes of fact and law here, precluding stubborn litigiousness damages. Id. Finally, they argue the claims derive from Magellan's substantive claims, which they argue should fail. Id. at 28-29.

Magellan characterizes Defendants' conduct as "willful and fraudulent misconduct and conscious indifference to consequences" such that would warrant punitive damages. Pl.'s Resp. at 21. It argues Defendants purposefully defrauded it twice and also defrauded other buyers, and that, even after Magellan confronted Defendants "with evidence that the debt it sold Magellan was double-sold," Defendants would not cooperate with Magellan to resolve the issue. Id. Further, Magellan states, attorneys' fees due to stubborn litigiousness are proper here, because it presented DMP with evidence of its alleged breach, but DMP refused to refund Magellan the amount it paid for the debt or to cooperate with Magellan to resolve the issue. Id. at 21-22.

The Court finds Magellan has stated a claim for both punitive damages and attorneys' fees. Because the Court has found Magellan also has stated its substantive claims, the Court finds the claims for punitive damages and attorneys'

23

fees withstand a motion to dismiss. Thus, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is **DENIED**.

### D.    Transfer

28 U.S.C. § 1404(a) allows a court to transfer a civil action if, on the whole, the transfer makes the litigation more convenient for the parties and witnesses and facilitates the interest of justice. Moore v. McKibbon Bros., Inc., 41 F. Supp. 2d 1350, 1356 (N.D. Ga. 1998). A defendant moving to transfer carries the substantial burden of establishing the propriety of the transfer. Id. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). "Transfer should be denied if it would merely shift inconvenience from one party to another." Id.

Defendants argue transfer is appropriate for convenience of witnesses and because it appears the locus of operative facts is in New York. Defs.' Mot. at 31. However, Defendants provide no specifics on why this is the case, other than the general statement that some non-party witnesses may reside in New York and certain documents may be located in New York. Id. at 30. Defendants argue that RJA Capital is a necessary party and is not subject to jurisdiction in this Court. Id. at 31. However, the Court already has rejected this argument.

Magellan argues transfer in this case would merely shift the inconvenience from Defendants to Magellan. Pl.'s Resp. at 23. Magellan points out that there are a number of witnesses it anticipates calling who would be equally or more inconvenienced in New York as they would be in Georgia: (1) Norman and Kawouk (both Georgia residents); (2) Joshua Minney (a West Virginia resident); (3) Gila Brock (a Florida resident); (4) David Mizrahi (a Florida resident); (5) Brad Hochstein (a Kansas resident); (6) Jack Mahoney (a Kansas resident); and (7) Brad Spoor (a Florida resident). Id. at 23-24. It argues the interest of justice is best served by keeping the case in Georgia, because Georgia has an interest in protecting its citizens (such as Magellan). Id. at 24.

"The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a specific showing of inconvenience to witnesses." Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 842 F. Supp. 2d 1360, 1366 (N.D. Ga. 2012) (citation omitted). But that factor supports transfer only if the movant goes beyond generalities and "make[s] a specific showing of inconvenience to the witnesses." Id. Further, district courts in this circuit have found that the location of physical documents does not play a substantial role in the venue analysis due to the electronic storage and transmission of information. See, e.g., Microspherix LLC v. Biocompatibles, Inc., No. 9:11-cv-

80813, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012); Polyform A.G.P. Inc. v.

Airlite Plastics Co., 4:10-cv-43-CDL, 2010 WL 4068603, at *4 (M.D. Ga. Oct. 15,

2010).  As the court in Microspherix explained,

> In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant. In light of the burden a party moving for transfer bears, absent a showing by the moving party to the contrary, this Court considers the location of relevant documents and the relative ease of access to sources of proof a non-factor.

2012 WL 243764, at *3.  See also ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d

542, 548 (S.D.N.Y. 2008) ("In an era of electronic documents, easy copying and

overnight shipping, this factor assumes much less importance than it did

formerly.").

General assertions about witnesses and documents, such as those of

Defendants, cannot trump a plaintiff's choice of forum.  See, e.g., Bishop's Prop.

& Investments, LLC v. Protective Life Ins. Co., No. 4:05-CV-126CDL, 2006 WL

2557907, at *2 (M.D. Ga. Sept. 1, 2006) (denying motion to transfer where the

defendant only made general allegations about documents and key witnesses, but

failed to identify any key witnesses or specific records that could not be

transported without unnecessary inconvenience); see also 15 C. Wright, A. Miller,

& E. Cooper, Federal Practice and Procedure §§ 3851 and 3853 (2nd ed. 1986 &

26

Supp. 2003) ("As is the case with witnesses, general allegations that transfer is needed because of books and records are not enough. The moving [party] must show the location and the importance of the documents in question.").

The Court finds Defendants have failed to show that other factors justify disturbing Magellan's choice of forum. Thus, Defendants' Motion to Transfer is **DENIED**.

## III.   CONCLUSION

For the foregoing reasons, Defendants Debt Management Partners, LLC, Adam March, and Daniel Valentine's Motion to Dismiss or Transfer Venue [Doc. 2] and Defendants Debt Management Partners, LLC, Adam March, and Daniel Valentine's Motion to Dismiss or Transfer Venue [Doc. 14] are **DENIED**.

**IT IS SO ORDERED** this 1st day of July, 2015.

MARK H. COHEN
United States District Judge